Robert McFarland, Special Judge,
delivered the opinion of the Court.
This cause originated before a justice .of the peace. Upon a trial before the Circuit Court of Campbell County, there was a verdict and judgment for the plaintiff below; from which the defendant appealed, in error. The action was brought to recover the value of a pis *595 tol, alleged to Rave been taken by tbe plaintiff in error from the defendant in error.
It appears that, at the time of the occurrence complained of, the plaintiff in error was a Captain in the United States army, and in command of a detached post, at the town of Jacksboro, Campbell County, Tennessee.
The defendant in error, who was a citizen, was, for some reason not shown, brought before the Provost Marshal. Some words arose, when the plaintiff in error took the pistol in controversy from the defendant in error, alleging that it was government property. Among other things, His Honor, the Circuit Judge, instructed the jury, in substance, that the question, whether or not such a flagrant state of war existed at the time and place, as would authorize the plaintiff in error, in the exercise of his duties as commander, to take the pistol for the use of the government, was a question for their determination.
This is erroneous. The question, whether or not war, in its legal sense, exists, is to be determined alone by the political power of the government; and of this determination, the courts must take judicial knowledge.
It is not a question that can, in any event, be left to a jury. The President of the United States, by proclamation of April, 1861, and the Congress, by Act of July, 1861, had recognized the existence of war, and had declared Tennessee to be one of the States in insurrection and rebellion. The Court should have instructed the jury, that the war existed, and that the military authorities of the United States were properly *596 holding the post at Jacksboro, it being part of the insurgent territory; and that if the plaintiff in error, as an officer of the United States service, was in command of that post, then he had the right to exercise all the discretionary powers of a commander, coming within the scope of his military duty.
For the proper exercise of this discretion, he was responsible alone to his superiors in command. Without this discretion, he would have been powerless.
If military commanders are to be held to establish before the courts, the necessity or expediency of all their military operations involving the loss of private property within the insurgent States, it would open a wide field for investigation.
The plaintiff in error, as the commander of a detached post, had, for the time, within the limits of his command, the same powers and discretion as the commander of a department; and if, in the discharge of what he regarded as his duties as commander, he saw proper to take the pistol from the defendant in error and turn it over to the government, either upon the ground that it was government arms, or because, in his opinion, the safety of his command or his post required him to disarm the defendant in error, then he would not be liable in damages for the act before the courts of the country. The act is to be taken not as the act of the individual, but as the act of the government, whose sovereignty he represents.
If, on the other hand, the plaintiff in error made use of his military position as a mere pretext to enable him to extort private property for his own use, or was *597 prompted by a spirit of wantonness and oppression, then he would be liable.
The defendant in error, read to the jury an order signed L. A. Gratz, A. A. A. G., dated Head-quarters, Provost Marshal General, Knoxville, 24th July, 1864, addressed to the plaintiff in error, informing him that the Provost Marshal General directed him to return to the defendant in error, one revolver, “upon proof that it being private property.” The meaning of the language quoted is controverted; that is to say, whether it means that proof had been made before the Provost Marshal General, that it was private property, or that the plaintiff in error was to return it upon proof being made before him, that it was private property.
We do not think it material to determine how this is. The reading of this order was objected to, but the objection was overruled, and His Honor instructed the jury that they “might look to it, and give it such weight as they might think it entitled to, going to establish any of the facts relied upon by the defendant or insisted upon by the plaintiff.” This was manifestly erroneous. This order is dated after the supposed trespass was committed, and seems to have been presented to the plaintiff in error after the close of the war, and after he had been discharged from the service. He replied to it, that he had turned the pistol over to another officer.
The act complained of, had occurred before the date of this order. The liability of the plaintiff in error, if any existed, had previously attached, and could not be altered or enlarged by any fact disclosed in this *598 order. It was wholly irrelevant and immaterial, and calculated to mislead the jury.
For these errors, the judgment must be reversed, and the cause remanded.